UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MIDWEST OILSEEDS, INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 4-00-CV-90695 |
| | ) |
| LIMAGRAIN GENETICS | ) |
| CORPORATION, f/k/a | ) |
| CALLAHAN ENTERPRISES, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

FILED
DES MOINES, IOWA
00 DEC 20 PM 4: 23
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

## NOTICE OF REMOVAL

Defendant Limagrain Genetics Corporation, f/k/a Callahan Enterprises, Inc. ("Limagrain"), pursuant to 28 U.S.C. §§ 1441 and 1446, submits this Notice of Removal of this lawsuit to the United States District Court for the Southern District of Iowa, and states:

1. Limagrain is the Defendant and Midwest Oilseeds, Inc. ("Midwest Oilseeds") is the Plaintiff in a lawsuit filed by Midwest Oilseeds on November 29, 2000, in the Dallas County District Court, Dallas County, State of Iowa, and designated as Cause No. LACV030601 (the "Lawsuit").

2. Both at the time of the filing of the Lawsuit and on the date of this Notice, Limagrain was and is a Delaware corporation and with its principal place of business in Indiana. Accordingly, for purposes of 28 U.S.C. § 1332(c)(1), Limagrain is a citizen of the States of Delaware and Indiana.

3. Both at the time of the filing of the Lawsuit and on the date of this Notice, Midwest Oilseeds was and is an Iowa corporation with its principal place of business in Iowa. Accordingly, for the purposes of 28 U.S.C. § 1332(c)(1), Midwest Oilseeds is a citizen of the State of Iowa.


Pleading # 1

4. The Lawsuit is a civil action alleging that Limagrain breached a contract between Limagrain and Midwest Oilseeds by "breeding crosses beyond the authorized A x B crosses, by using, selling, providing or otherwise transferring soybean germplasm covered by the Contract to third parties without obtaining the required [licensing agreements]." (Petition, ¶ 14.) Midwest Oilseeds also alleges that Limagrain breached the "Limitation of Warranty and Seed Purchase Agreement provision" of the contract. (Petition, ¶ 15.)

5. Limagrain denies that it has breached the contract and denies that Midwest Oilseeds has suffered, or is entitled to recover, any damages. Nonetheless, Limigrain believes that Midwest claims damages that exceed the sum or value of $75,000, exclusive of interest and costs. Accordingly, the amount in controversy in the Lawsuit exceeds the diversity jurisdiction minimum required by 28 U.S.C. § 1332(a).

6. The Petition in this matter was filed on November 29, 2000. On or about December 7, 2000, Limagrain first received the Petition and Original Notice in the Lawsuit by service of process. Fewer than 30 days have passed since Limagrain received Midwest Oilseeds' Petition and Original Notice by service of process. Accordingly, the deadline for filing this Notice of Removal under the statutes of the United States has not expired.

7. The Lawsuit is within this Court's original jurisdiction pursuant to 28 U.S.C. § 1332, by reason of the diversity of citizenship of the parties and the amount in controversy. The Lawsuit is properly removed to this Court pursuant to 28 U.S.C. §§ 95(b)(1) and 1441.

8. This Notice is accompanied by copies of all process, pleadings and orders served upon Limagrain in this action, all of which are attached hereto as Exhibit A.

WHEREFORE, Defendant Limagrain Genetics Corporation, f/k/a Callahan Enterprises, Inc., notifies the Court of the removal of this action from the Iowa District Court for Dallas County, Iowa to the United States District Court for the Southern District of Iowa.

*David L. Phipps*
David L. Phipps
Whitfield & Eddy, P.L.C.
317 6th Avenue, Suite 1200
Des Moines, IA 50309-4195
Telephone: (515) 288-6041
Telefax: (515) 246-1474

Attorneys for Defendant Limagrain Genetics Corporation, f/k/a Callahan Enterprises, Inc.

IN THE IOWA DISTRICT COURT, DALLAS COUNTY

---

MIDWEST OILSEEDS, INC.

    PLAINTIFF,          LAW NO. LACV030601

VS.
                                     ORIGINAL NOTICE

LIMAGRAIN GENETICS CORPORATION,
  F/N/A/ CALLAHAN ENTERPRISES, INC.,

    DEFENDANT.

---

TO THE ABOVE-NAMED DEFENDANT

    **YOU ARE NOTIFIED** that a Petition has been filed in the Office of the Clerk of this Court naming you as the Defendant in this action. A copy of the Petition and Jury Demand is attached to this Notice. The attorney for the Plaintiff is:

    Nick Critelli
    Nick Critelli Associates, p.c.
    317 6th Ave., Ste. 500
    Des Moines, Iowa 50309
    Tele: 515-243-3122
    Fax:  515-243-3121

    **YOU MUST SERVE** a Motion or Answer within twenty (20) days after service of this Original Notice upon you, and, within a reasonable time thereafter, file your Motion or Answer with the Clerk of Court for Dallas County, at the County Courthouse in Adel, Iowa. If you do not, Judgment by default may be rendered against you for the relief demanded in the Petition.

    If you require the assistance of auxiliary aids or services to participate in Court because of a disability, immediately call your district ADA coordinator at 515-286-3394. If you are hearing impaired, call Relay Iowa TTY at 1-800-735-3942.

                                  CLERK OF DALLAS COUNTY DISTRICT COURT

                                  BY _Gloria L. Ward_
                                  CLERK OF COURT
                                  DALLAS COUNTY COURTHOUSE
                                  ADEL, IOWA  50003

YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.
(Adopted by Acts 1976; amended effective July 1, 1979; July 1, 1987; amended effective Jan 24, 1998.)

EXHIBIT A

IN THE IOWA DISTRICT COURT, DALLAS COUNTY

---

MIDWEST OILSEEDS, INC.

    PLAINTIFF,                                 LAW NO. _LACV030601_

VS.

                                          PETITION

LIMAGRAIN GENETICS CORPORATION,        (Jury Demanded)
  F/N/A/ CALLAHAN ENTERPRISES, INC.,

    DEFENDANT.

---

**COMES NOW** the Plaintiff and, for cause of action, states as follows:

## JURISDICTION

1. Plaintiff is an Iowa corporation with its principal place of business in Dallas County, Iowa.

2. The Defendant Limagrain Genetics Corporation is a corporate entity authorized to do business by the State of Illinois, having its principal place of business in Peoria, Illinois.

3. That at all times material hereto, and for the purposes herein, the Defendant Limagrain Genetics Corporation was formerly known as Callahan Enterprises, Inc., an Illinois corporation.

4. Upon best knowledge and belief, on or about the 29th day of June, 1994, the said Limagrain Genetics Corporation assumed the business operation of the said Callahan Enterprises, Inc. and now operates that business under the style of Limagrain Genetics Corporation.

5. On or about the 14th day of March, 1986, the said Callahan Enterprises, Inc. and the Plaintiff Midwest Oilseeds entered into a Contract which placed jurisdiction over disputes arising thereunder as follows:

> "Purchaser [Callahan Enterprises, Inc.] agrees that supplier [Midwest Oilseeds, Inc.] may bring an action in Dallas County, Iowa to recover damages as a result of the breach of this Agreement, along with reasonable attorney fees and costs associated with any action commenced in regard thereto." (Plaintiff's Exhibit A, Page 6)

6. The aforesaid Contract was entered into by the parties in the State of Iowa and was to be performed in whole or in part within the State of Iowa.

7. Accordingly, by operation of law and the Contract of the parties, jurisdiction of this action is placed before this Court.

## PARTICULARS

8. As aforesaid, on or about the 14th day of March, 1986, the Plaintiff Midwest Oilseeds, Inc. and the Defendant's predecessor, Callahan Enterprises, Inc., entered into a written agreement, a copy of which is attached hereto, marked "Plaintiff's Exhibit A."

9. Pursuant to said Agreement, the parties agreed to exchange their proprietary soybean germplasm and develop therefrom new germplasm which would be subject to certain restrictions which are set forth in the aforesaid Contract.

10. By the terms of the Contract, the Defendant agreed that its possession and use of all soybean germplasm covered by the Contract, would be subject to the following licensing requirement:

"4.  Private Label Soybean Licensing Agreement

   "a.   CEI and MO <u>shall sign Private Label Soybean Licensing Agreements</u> as approved by MO and CEI with all participating seed companies and seedsmen. CEI and MO shall be responsible to each other for collection of fees on all seedstock sold of varieties owned by the other party."

11. Furthermore, Defendant agreed that its possession and use of soybean germplasm covered by the Contract would be subject to the contractual limitation found in paragraph 4(b) thereof:

   "4b.  <u>The Limitation of Warranty and Seed Purchase Agreement</u>, a copy of which is attached, shall apply to all MO developed seeds and the principles of such shall be incorporated into the Licensing Agreements referred to in sub paragraph a above. CEI research shall be excluded from the restrictions of the Seed Purchase Agreement for purposes of making A X B crosses (not back crosses or biotechnical alterations) if such resulting populations are available for use by MO and subsequent lines selected from the populations are marketed under the terms of this agreement." [Emphasis Added]

12. The Limitation of Warranty and Seed Purchase Agreement, as set forth above, states as follows:

"Midwest Oilseeds Soybean Seed Purchase Agreement

"Supplier represents and Purchaser hereby acknowledges that Supplier is engaged in the business of developing and supplying for sale various varieties of soybean seeds. Supplier has a substantial investment in the development and production of Midwest Oilseeds Soybean Seeds and in the use of the subsequent production of the Midwest Oilseeds Soybean Seeds herein sold. Supplier has expended substantial effort in developing a market for Midwest Oilseeds Soybean Seeds. Supplier has existing contractual relationships with other purchasers and growers for the sale of Midwest Oilseeds Soybean Seeds and expectations of additional contracts for sale of Midwest Oilseeds Soybean Seeds in the future.

"In consideration of the foregoing and in consideration of the Midwest Oilseeds Seeds herein sold, Purchaser hereby acknowledges and agrees that the production from the Midwest Oilseeds Soybean Seeds herein sold will be used only for feed or processing and will not be used or sold for seed, breeding or any variety improvement purposes. Purchaser acknowledges Supplier's proprietary interest in the use of subsequent production from the seeds herein sold, and agrees it would be a violation of this agreement to allow the subsequent production of the seed herein sold to be used to create a seed variety or seed product from said production, which may be used for seed purposes by individuals or entities other than Midwest Oilseeds, Inc. Purchaser agrees and acknowledges that any use of Midwest Oilseeds Soybean Seeds, which is forbidden by this agreement, will constitute a misappropriation of the personal property of Midwest Oilseeds, Inc., and will therefore result in a breach of this agreement. Purchaser agrees that Supplier may bring an action in Dallas County, Iowa, to recover damages as a result of the beach of this agreement, along with reasonable attorney fees and costs associated with any action commenced in regard thereto.

"Purchaser agrees and acknowledges that any use of Midwest Oilseeds Soybean Seeds forbidden by this agreement will damage Supplier's legitimate expectation of future sales of soybean seed and any use of Midwest Oilseeds Soybean Seeds in violation of this agreement will constitute an attempt to intentionally injure or destroy Supplier's prospective business expectations in future sales of Midwest Oilseeds Soybean Seeds.

"Purchaser agrees and acknowledges that any use of Midwest Oilseeds Soybean Seeds in violation of this agreement will cause a minimum damage to Midwest Oilseeds, Inc. of $10.00 per bushel for each bushel so used, and that if subsequent production of the seed herein sold is used to create a seed variety or seed product a minimum damage to Midwest Oilseeds, Inc. of $10.00 per bushel for all seed varieties or seed products thereby created will be caused. This agreement shall not limit any other rights, legal or equitable, that the Supplier has but shall be accumulative."

13. And further in paragraph 10 a. that:

"a.  Dealer sales by Stine Seeds or affiliates of MO originated lines and dealer sales by Callahan Seeds or affiliates of CEI originated lines shall be excluded from this

agreement. CEI ~~and MO~~[1] originated lines covered in paragraph 4b of this agreement shall not be included in this exclusion."

## THE BREACH

14. In 1998 Plaintiff first became aware that years prior thereto, the Defendant acted in violation of paragraph 4(b) of the aforesaid Contract by breeding crosses beyond the authorized A x B crosses, and by using, selling, providing or otherwise transferring soybean germplasm covered by the Contract to third parties without obtaining the required "Private Label Soybean Licensing Agreements" as required by paragraphs 4(a) and (b) of the Contract.

15. Furthermore, by its breach Defendant automatically and ipso facto breached the Limitation of Warranty and Seed Purchase Agreement provision of paragraph 4(b) of the Contract.

## DAMAGES

16. Pursuant to the Limitation of Warranty and Seed Purchase Agreement provision of paragraph 4(b) of the Contract, the parties contracted for a specific measure of damage in the event of a breach, to-wit:

> "Purchaser agrees and acknowledges that any use of Midwest Oilseeds Soybean Seeds in violation of this agreement will cause a minimum damage to Midwest Oilseeds, Inc. of $10.00 per bushel for each bushel so used, and that if subsequent production of the seed herein sold is used to create a seed variety or seed

---

[1] "...and MO" was specifically stricken out by the parties: ~~"and MO"~~ and initialed by HHS, Harry H. Stine on behalf of the Plaintiff MO and NEC, Noel E. Callahan on behalf of the Defendant CEI, thus making CEI's originated lines not subject to exclusionary clause in paragraph 4b of the Contract.

product a minimum damage to Midwest Oilseeds, Inc. of $10.00 per bushel for all seed varieties or seed products thereby created will be caused. This agreement shall not limit any other rights, legal or equitable, that the Supplier has but shall be accumulative."

17. Furthermore, the parties contracted that in the event of a breach of the contract, the non-breaching party may recover "reasonable attorney fees and costs associated with any action commenced in regard thereto."

18. At this time, without the benefit of discovery to determine the number of bushels used by Defendant in violation of the Contract, Plaintiff is presently unable to quantify its damages.

19. Plaintiff is entitled to damages from Defendant in such sum as will fully, fairly and adequately compensate it under the contractual measure of damages agreed upon by the parties, together with interest, costs and reasonable attorney fees associated with this action.

**WHEREFORE,** Plaintiff Midwest Oilseeds prays for Judgment against the Defendant in such sum as will fully, fairly and adequately compensate it for its loss as damages, based upon the parties' contractual measure of damage, together with interest, costs and reasonable attorney fees associated with the prosecution of this action.

JURY DEMAND

Plaintiff hereby demands trial by Jury on all issues herein.

                              NICK CRITELLI ASSOCIATES, p.c.

BY _/s/ Nick Critelli_____
  NICK CRITELLI  PK0000010
Suite 500
317 Sixth Avenue
Des Moines, Iowa  50309-4128
Tele.:  515-243-3122
Fax:    515-243-3121
**ATTORNEY FOR PLAINTIFF**

MIDWEST OILSEEDS, INC.

and

CALLAHAN ENTERPRISES, INC.

AGREEMENT                    EXHIBIT A

This agreement is made between Callahan Enterprises, Inc. of Westfield, Indiana, hereinafter called CEI, and Midwest Oilseeds, Inc. of Adel, Iowa, hereinafter called MO, this __14__ day of __March__, 1986.

1. <u>Definitions</u>

   a. The term "fees" refers to fees provided for in the Private Label Soybean Licensing Agreement signed between CEI and MO and their respective licensees and referred to in paragraph 4 below.

   b. The term "elite trials" or "elite program" shall mean those trials in which MO and CEI jointly test present and newly selected soybean lines for current or future sale. Soybean lines are normally first entered into "elite trials" after "hill testing" and "retesting."

   c. The term "originator" or "originating party" shall mean the party who does the first year tests (Year 3 - Schedule A) and second year tests (Year 4 - Schedule A) and the party who acquires any lines from outside sources.

2. <u>Soybean Supply</u>

   a. MO and CEI shall develop, test and produce soybean varieties.

   b. Ownership of the developed varieties shall remain with the originating party, regardless of who holds the Plant Variety Protection certificate, provided any certificate is sought.

   c. The originating party shall be primarily responsible for all costs associated with production and maintenance of breeder seed; however, upon mutual agreement of the parties, breeder seed increases may be jointly produced and shared. Each originator shall be responsible for any necessary purification of a variety it originates to meet federal standards.

3. <u>Soybean Parent Seed Production and Marketing</u>

   a. Each party shall be responsible for increasing the breeder seed of all lines it markets, unless otherwise mutually agreed.



    b. All costs of marketing (including outside sales agents) shall be borne by the party marketing the parent seed.

    c. Each party shall distribute samples to customers it services.

4. <u>Private Label Soybean Licensing Agreement</u>

    a. CEI and MO shall sign Private Label Soybean Licensing Agreements as approved by MO and CEI with all participating seed companies and seedsmen. CEI and MO shall be responsible to each other for collection of fees on all seedstock sold of varieties owned by the other party.

    b. The Limitation of Warranty and Seed Purchase Agreement, a copy of which is attached, shall apply to all MO developed seeds and the principles of such shall be incorporated into the Licensing Agreements referred to in sub paragraph a above. CEI research shall be excluded from the restrictions of the Seed Purchase Agreement for purposes of making A X B crosses (not back crosses or biotechnical alterations) if such resulting populations are available for use by MO and subsequent lines selected from the populations are marketed under the terms of this agreement.

    c. MO agrees to assume all costs, fees, charges, penalties and any other liability incurred as a result of the incorporation of the principles of the Limitation of Warranty and Seed Purchase Agreement into the Licensing Agreement.

5. <u>Elite Yield Trials</u>

    a. CEI and MO shall jointly conduct yield trials of lines developed in the MO and CEI program or on lines developed by any other program jointly selected by MO and CEI.

    b. Selection of new lines for sale from the elite program shall be made by joint decision of MO and CEI.

    c. At the conclusion of each year's elite yield trial program, each party may select the seed lines it intends to market.

6. <u>CEI-MO Primary Relationship</u>

    a. MO shall be the principal supplier of lines to CEI other than CEI initiated lines.

    b. CEI shall be the principal supplier of lines to MO other than MO initiated lines.



    c.  Exclusivity of soybean lines to be marketed shall be as follows:

        1) MO Developed Lines - shall be marketed only through CEI or MO.

        2) CEI Developed Lines - shall be marketed only through MO or CEI.

    d.  CEI shall pay MO its research fee share per rates in paragraph 7 on all retail sales on MO developed lines. MO shall pay CEI its research fee share per rates in paragraph 7 on all retail sales on CEI developed lines.

7. Distribution of Research Fees

    a.  Each party shall be responsible for collecting fees on lines that it markets. Remittance of fee shares to the other party shall be made within 30 days of collection.

    b.  Division of fees shall be as follows:

| Originator | Marketer | CEI Share | MO Share |
|---|---|---|---|
| MO | CEI | 50% | 50% |
| CEI | MO | 50% | 50% |
| CEI | CEI | 66.6% | 33.4% |
| MO | MO | 33.4% | 66.6% |

    c.  Sales agents commissions shall be the responsibility of marketer.

8. Term of Agreement

    a.  This agreement shall remain in effect until termination by either party in the following manner: either party may terminate by written notice to the other party by registered mail two years prior to the date of termination. Notice shall be received during the month of July.

9. Research Fees Duration

    Research fees to be earned on lines in first year elite tests (Year 5 - Schedule A) and second year elite tests (Year 6 - Schedule A) and research fees in effect at the date of this agreement and all future research fees generated under future agreements between the parties shall be due and payable for the period in which the licensee or his assignee uses the particular soybean lines irrespective of any termination of this agreement.



10. Exclusion

    a. Dealer sales by Stine Seeds or affiliates of MO originated lines and dealer sales by Callahan Seeds or affiliates of CEI originated lines shall be excluded from this agreement. CEI ~~and MO~~ originated lines covered in paragraph 4b of this agreement shall not be included in this exclusion.

    b. Division of Research Fees from Merschman Seed, J. M. Schultz Seed, Maumee Valley Seed, and Pioneer International shall be as follows:

    | Originator | Marketer | CEI Share | MO Share |
    |---|---|---|---|
    | CEI | CEI | 100% | 0% |
    | MO | MO | 0% | 100% |
    | CEI | MO | 50% | 50% |

    c. Lines or sublines developed by MO and deleted from the program by MO shall be excluded from this agreement. Lines or sublines developed by CEI and deleted from the program by CEI shall be excluded from this agreement.

    d. Lines that are not Group 0 through IV in maturity which are originated by FFR Cooperative, Madison Seed Company and Stewart Seeds, Inc., and marketed by CEI shall be excluded from this agreement.

11. Indemnification

    Each party agrees to indemnify the other party and hold it harmless from any claims, demands, liabilities, actions, suits or proceedings asserted by third parties and arising from any soybean line originated by that party.

12. Miscellaneous

    a. This agreement may be amended by written instrument signed by both parties.

    b. This agreement shall be binding upon sale or assignment by either party.

    c. All previous research fee agreements between MO and CEI are hereby terminated, subject to paragraph 6a of the contract between the parties dated February 8, 1982.

MIDWEST OILSEEDS, INC.                CALLAHAN ENTERPRISES, INC.

By _____             By _____
   Harry H. Stine, President            Noel E. Callahan, President

SCHEDULE A

SOYBEAN VARIETAL DEVELOPMENT PROGRAM

| Year | Stages | | |
|---|---|---|---|
| 1 | Crossing Block (hybridization) | | |
| | Winter Nursery | | |
| |     – $F_1$ Nursery (artificial light) | | |
| |     – $F_2$ Bulks (nonlighted; pod picked) | | |
| 2 | $F_3$ Bulk Populations (select single plants by maturity) | | |
| 3 | 1st Year Tests (hill plots) | | Purification Program |
| 4 | 2nd Year Tests (2 row plots) (retest) | | Bulk Rows |
| 5 | Elite Tests (4 row plots) | | Plant Rows |
| 6 | Elite Tests (4 row plots) | Breeder Seed | Plant Row Inc. & Yield Test |
| 7 | Release to Marketing | Parent Seed | Breeder Seed |
| 8 | | Parent Seed (impure source- plot seed) | Parent Seed (pure source- single plant) |

## LIMITATION OF WARRANTY -

MIDWEST OILSEEDS warrants to the extent of the purchase price that seeds are as described on this bag and on the tag attached thereto, within recognized tolerances. MIDWEST OILSEEDS gives NO OTHER WARRANTY, expressed or implied, of MERCHANTABILITY or FITNESS of the seed for any particular purpose, nor any other warranty against loss due to any cause, including environmental conditions, soil conditions, chemicals or farming practices or the response of this seed to any such conditions. MIDWEST OILSEEDS shall not be liable for incidental or consequential damages. Purchaser accepts these terms unless he returns the seed within fifteen days for refund of purchase price.

## MIDWEST OILSEEDS SOYBEAN SEED PURCHASE AGREEMENT -

Supplier represents and Purchaser hereby acknowledges that Supplier is engaged in the business of developing and supplying for sale various varieties of soybean seeds. Supplier has a substantial investment in the development and production of Midwest Oilseeds Soybean Seeds, and in the use of the subsequent production of the Midwest Oilseeds Soybean Seeds herein sold. Supplier has expended substantial effort in developing a market for Midwest Oilseeds Soybean Seeds. Supplier has existing contractural relationships with other purchasers and growers for the sale of Midwest Oilseeds Soybean Seeds and expectations of additional contracts for sale of Midwest Oilseeds Soybean Seeds in the future.

In consideration of the foregoing and in consideration of the Midwest Oilseeds Seeds herein sold, Purchaser hereby acknowledges and agrees that the production from the Midwest Oilseeds Soybean Seeds herein sold will be used only for feed or processing and will not be used or sold for seed, breeding or any variety improvement purposes. Purchaser acknowledges Supplier's proprietary interest in the use of subsequent production from the seeds herein sold, and agrees it would be a violation of this agreement to allow the subsequent production of the seed herein sold to be used to create a seed variety or seed product from said production, which may be used for seed purposes by individuals or entities other than Midwest Oilseeds, Inc. Purchaser agrees and acknowledges that any use of Midwest Oilseeds Soybean Seeds, which is forbidden by this agreement, will constitute a misappropriation of the personal property of Midwest Oilseeds, Inc., and will therefore result in a breach of this agreement. Purchaser agrees that Supplier may bring an action in Dallas County, Iowa, to recover damages as a result of the breach of this agreement, along with reasonable attorney fees and costs associated with any action commenced in regard thereto.

Purchaser agrees and acknowledges that any use of Midwest Oilseeds Soybean Seeds forbidden by this agreement will damage Supplier's legitimate expectation of future sales of soybean seed and any use of Midwest Oilseeds Soybean Seeds in violation of this agreement will constitute an attempt to intentionally injure or destroy Supplier's prospective business expectations in future sales of Midwest Oilseeds Soybean Seeds.

Purchaser agrees and acknowledges that any use of Midwest Oilseeds Soybean Seeds in violation of this agreement, will cause a minimum damage to Midwest Oilseeds, Inc. of $10.00 per bushel for each bushel so used, and that if subsequent production of the seed herein sold is used to create a seed variety or seed product a minimum damage to Midwest Oilseeds, Inc. of $10.00 per bushel for all seed varieties or seed products thereby created will be caused. This agreement shall not limit any other rights, legal or equitable, that the Supplier have but shall be accumulative.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MIDWEST OILSEEDS, INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CAUSE NO. _____ |
| LIMAGRAIN GENETICS | ) |
| CORPORATION, f/k/a | ) |
| CALLAHAN ENTERPRISES, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the following documents have been served this 20th day of December 2000, by first class, United States mail, postage prepaid and addressed to Nick Critelli, NICHOLAS CRITELLI ASSOCIATES, P.C., Suite 500, 317 Sixth Avenue, Des Moines, Iowa 50309:

1. Notice of Removal;

2. Notice of Filing Notice of Removal;

3. Appearance of David L. Phipps;

4. Civil Cover Sheet;

5. Certification Pursuant to Local Rule 81.1;

6. Certificate of Service;

_David L. Phipps_ (signature)
David L. Phipps
Whitfield & Eddy, P.L.C.
317 6th Avenue, Suite 1200
Des Moines, IA  50309-4195
Telephone:  (515) 288-6041
Telefax: (515) 246-1474

Attorney for Defendant Limagrain Genetics Corporation, f/k/a Callahan Enterprises, Inc.